# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, AFL-CIO,
AND UAW LOCAL 716,

          Plaintiffs,

vs.

TRANE U.S. INC,

          Defendant.

CASE NO. 2:18-cv-02203-PKH

JUDGE HOLMES

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO VACATE AND REMAND ARBITRATION AWARD

Michael T. Anderson
Arlus J. Stephens
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC  20005
Tel.: 202-223-2620; Fax: 202-296-9600
manderson@murphypllc.com
astephens@murphypllc.com

John L. Burnett     77021
Lavey & Burnett
904 W. Second Street
Little Rock, AR  72201
Tel.: 501-376-2269; Fax: 501-372-1134
jburnett@laveyandburnett.com

Attorneys for Plaintiffs International Union,
UAW and UAW Local 716

## INTRODUCTION AND SUMMARY

Plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO and UAW Local 716 (collectively, "the Union" or "UAW") respectfully move to vacate an incomplete arbitration award and to remand for clarification from the Arbitrator.

The case arises from a dispute between the Union and Defendant Trane U.S., Inc. ("Trane" or "the Company") over vacation pay accruing in 2017, the year Trane closed its Fort Smith plant. Trane contended that its employees were not entitled to any payout of for time in 2017, including the months actually worked up to the April and June closing dates. Doc. 34-5, ECF p. 135. The Union contended that Trane employees were entitled to vacation pay for all time accruing in 2017, including the *pro rata* payout for the months actually worked in 2017. *Id.*

Arbitrator T. Zane Reeves's June 29, 2018 Merits Award rejected Trane's position. Doc. 34-10. The Merits Award directed that "all employees shall be made whole for the full allowance of vacation pay for which they would have qualified for in 2017, according to the amount of their seniority." The Arbitrator cited *Canteen Corp.*, 101 Lab. Arb. (BNA) 925 (1993) which states that employees are "entitled to vacation pay when the employer ceased its operations prior to the employees' anniversary dates of employment, despite the fact that the contract provided that vacation pay was to be issued on the employee's anniversary date."

1

Nevertheless, on September 13, 2018, the Arbitrator sent an email apparently limited to three employees who reached "milestone" anniversary dates in 2017, without addressing pay for the remaining 200 employees. Doc. 34-12, ECF p. 2.

In Part I of the Argument, we explain the inconsistency between June 29, 2018 Merits Award and his September 13, 2018 email. After the June 29 Merits Award, Trane represented to the Arbitrator that it had paid out all "2017" vacation time, and claimed that the only remaining issue for clarification related to three employees with milestone anniversaries after closing. Doc. 34-13, ECF p. 2. Nevertheless, as Trane has now admitted in the Court of Appeals, Trane did not pay employees <u>any</u> vacation pay for time worked in 2017. Doc. 34-13 ECF p. 2. Trane's representation of having paid out for "2017" time actually referred to pay for time worked <u>in 2016</u> that would have become available on January 1, 2017. Doc 35-1, pp. 15-20. But payment for time worked in 2016 was never in dispute in this case. Trane's relabeling of this undisputed sum as "2017 pay" skirts the Merits Award, and nullifies the payments in dispute – vacation pay for time <u>accruing</u> in 2017 with which the entire Merits Award was concerned.

The Arbitrator's September 13, 2018 email was apparently issued in reliance on Trane's representation. But Trane's avoidance of liability for vacation accrued in 2017 cannot be reconciled with the June 29, 2018 Merits Award. As Judge Melloy noted at oral argument in the Eighth Circuit, the Arbitrator's September 13,

2018 email simply failed to address the broader question of vacation pay to all unit workers for time accruing in 2017. Doc. 35-1, p. 19. Whether this was inadvertence or an internal contradiction, the Court should remand to the Arbitrator to clarify his Award. See *Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003) (remand where arbitration award failed to address an issue): *Keebler Co. v. Milk Drivers and Dairy Employees Union*, 80 F.3d 284, 287 (8th Cir. 1996) (vacating award where "the arbitrator's analysis contains a glaring internal inconsistency.")

In Part II, we explain that the Court need not reach its own judgment on the merits of the dispute. The Union only seeks an order remanding the issue to the Arbitrator for clarification, *see Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001). If Trane's position is correct, Trane suffers no prejudice from an order directing the Arbitrator to clearly articulate his intention. The Court should save the resources of this Court and the Court of Appeals simply by allowing that remand.

///

///

## STANDARD OF REVIEW

The District Court has subject-matter jurisdiction under § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a), subject to the parallel provision of the Federal Arbitration Act (FAA), 9 U.S.C. § 10. Motions to vacate arbitration awards are governed by 9 U.S.C. § 10. *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 721 (8th Cir. 1999).

Where the parties proceed on a stipulated record, the Court may make a decision on the merits, even if there exist, upon the stipulated record, disputed issues of material fact. *See Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir.1996); *Crow v. Gullet*, 706 F.2d 856, 858 n.3 (8th Cir. 1983).

On a motion to vacate, the Court affords great deference to the reasoned judgment of the Arbitrator. See *Keebler Co. v. Milk Drivers and Dairy Employees Union*, 80 F.3d 284, 287 (8th Cir. 1996). However, a court may vacate and remand where the Arbitrator fails to address a disputed issue. *See Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003). Similarly, a court may vacate and remand where an Arbitrator's award contains an unexplained inconsistency or internal contradiction. *See Keebler Co.*, 80 F.3d at 287 (vacating award where "the arbitrator's analysis contains a glaring internal inconsistency"); *George A. Hormel & Co. v. United Food & Commercial Workers,*

*Local 9*, 879 F.2d 347, 350-351 (8th Cir. 1989) (inconsistency in award is ground to vacate).

Where an incomplete or inconsistent award is vacated, a court may not impose its own judgment as to the merits. The Court may simply remand to the Arbitrator for clarification of the issue. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001).

## STATEMENT OF FACTS

### A.    The Collective Bargaining Agreement and the Plant Closing

The Union and Trane U.S. Inc. were parties to a collective bargaining agreement ("the CBA") that covered workers at the Company's plant in Fort Smith from March 17, 2013 to April 1, 2017. Doc. 34-5, ECF pp. 1-131.[1]

In February 2017, the Company announced its intent to close the plant. The Union and the Company entered into a Memorandum of Agreement (MOA) regarding certain closing issues on March 8, 2017. Doc. 34-5, ECF pp. 137-143. The parties agreed in the MOA to extend the CBA's term to the date of the plant's actual closing or April 1, 2019, whichever was earlier. *Id.*

---

[1] The pagination given herein is to the ECF pagination. The internal pagination of some cited documents may vary from the ECF page references. To avoid confusion, we cite the ECF page number rather than the internal document pagination.

### B.    The Vacation Pay Grievance

### 1.    The framing of the issue

The CBA contains a grievance-arbitration procedure to resolve disputes between the parties as to the meaning of their Agreement. Doc. 34-5, ECF p. 42, Article XIV. The Union filed a class grievance on May 31, 2017 protesting the denial of accrued vacation pay to employees terminated at plant closing. Doc. 34-5, ECF pp. 132-136.

> Article XX ¶166(b) of the parties' CBA, provides in relevant part:
>
> (1) An eligible employee whose employment is terminated because of plant closing shall be entitled to Severance Pay in a lump sum, for which he is eligible as described below and the full vacation allowance for which he might have qualified for the calendar year in which his employment is terminated and any other accumulated allowances due him, provided that he: (i) After the announcement of the plant closing continues regularly at work for the Company until the specific date of his termination, or (ii) Fails to continue regularly at work until the specific date of his termination due to verified personal illness or leave of absence, or (iii) Is on layoff for lack of work at the time of the plant closing.

Doc. 34-5 at ECF pp. 46-47.

When employees did not receive any vacation pay for time which accrued or would have accrued in 2017, the Union filed a grievance. Doc. 34-5, ECF pp. 132-136. The Union's position was stated in the grievance record as follows:

> Employees are eligible for vacation which they would have accrued in the calendar year of a closure announcement. This special situation only applies during a "Plant Closure" and applicable to the vacation which "would have" been earned during the full closure year (and paid out the subsequent year) based on the above referenced Article and Section of the CBA.

Doc. 34-5, ECF p. 135.

The Company made this response to the grievance:

An eligible employee whose continuous accumulation of service credits
during the vacation year may entitle him/her to an additional vacation under
the provisions of Section 1, Article IX, if their continuous accumulative of
service credits would occur prior to being terminated on April 28th or July
28th. If their continuous accumulative of service credits occurs after being
terminated on April 28th or July 28th, they would not be eligible for
additional vacation.

Doc. 34-5, ECF p. 135.

After the parties were unable to resolve the grievance, the parties selected

Arbitrator T. Zane Reeves to hear the case. On February 8, 2018, Arbitrator Reeves

issued a preliminary decision framing the issue, holding that the vacation pay

grievance was substantively arbitrable. Doc. 34-2. The Arbitrator framed the issue

as: "Did the Company violate the Collective Bargaining Agreement and

MOA/Closing Agreement by denying 2017 vacation pay and unused accrued sick

leave in 2017 to employees who were terminated at plant closing? If so, what shall

be the proper remedy?" Doc. 34-2 at ECF p. 6.

> **2.      June 29, 2018 Award: Article IX does not restrict relief, and
> ordering back pay for all workers affected by plant closing.**

The parties proceeded to hearing on the merits. In his June 29, 2018 Award,

Arbitrator Reeves found the Company's position violated Article XX ¶166(b) as to

vacation pay. Doc. 34-10.

The parties' dispute concerned whether employees were entitled to vacation pay for 2017, the year in which the plant closed. As the Arbitrator noted, the Union's grievance involved the loss of vacation pay accrued in 2017, not pay for time accrued in 2016 but paid out in 2017. The Merits Award set this forth: "For example, Union witness Mike Klomfas testified that he was paid out on August 6, 2017 for vacation and sick pay that he earned in 2016, but not for any leave in 2017. Klomfas asserted that he was 'shorted sick and vacation pay for 2017.'" Doc. 34-10, ECF p. 12.

The Company's position was based on Article IX of the CBA, which limits the time at which employees are normally entitled to such a payout to the anniversary of their hiring date, with certain exceptions. Doc. 34-5, ECF pp. 22-23. The Company argued that, under Article IX, employees who lost their jobs due to plant closing did not fall within Article IX's exceptions, and so could not recover any accrued vacation pay unless they had reached their work anniversary within the calendar year prior to the closing. As the Arbitrator described the Company's position: "The Company's position is that an eligible employee is only entitled for vacation pay, under provisions of Article IX, Section 1, if he/she accumulates continuous service credits during the preceding calendar/vacation year. . . . Thus, the Company contends that an employee's year of continuous service would have

8

to occur in 2017, prior to being terminated on either April 4, 2017 or July 28, 2017, in order to earn vacation pay."  Doc. 34-10, ECF p. 4.

In the June 29, 2018 Merits Award, Arbitrator Reeves rejected the Company's limitation. He held that Article IX's list of events restricting a payout of accrued vacation time could not be read to apply to a plant closing, which was separately treated under Article XX, titled "Job and Income Security." Doc. 34-10 at ECF p. 10. "Article IX in 2013 did not list 'termination by plant closure' as an included termination on their list in Article IX. Therefore, Article IX's list cannot reasonably be migrated into Article XX." Doc. 34-10 at ECF pp. 12-13. The Arbitrator held that the limitations on vacation payout in other circumstances, as for retired employees, could not apply against workers who involuntarily lost their jobs due to a plant closing. Doc 34-10 at ECF p. 18. The Award concluded: "[T]he Company imposed arbitrary guidelines for determining eligibility for 2017 vacation pay for employees who were terminated at plant closing. There was no compelling evidence produced to demonstrate that the eligibility requirements applied to employees who willingly retire also should be applied to employees who lose their jobs because of the Company's unilateral decision to close a plant . . . Thus, all employees shall be made whole for the full allowance of vacation pay for which they would have qualified for in 2017, according to the amount of their seniority." Doc. 34-10 at ECF p. 19 (emphasis added).

9

Nowhere in the Arbitrator's Merits Award is there any limitation on "the full allowance of vacation pay for which they would have qualified for in 2017," nor any qualification on his agreement with the Union's position that employees were entitled to vacation pay accruing in 2017.

### 3.   The post-Award compliance dispute

On July 23, 2018, Trane nevertheless sent checks to only three workers out of the 200 employed in the plant – only those whose anniversary dates fell in 2017 after their closing-related layoffs. Doc. 34-21, at ECF p. 183. The Union objected that the payments made by Trane were not in compliance with the June Award. *Id*. The Union pointed out that, under the Arbitrator's June award, all employees covered by the Agreement (about 200 employees) should have received the full allowance of vacation pay for which they would have qualified in 2017, notwithstanding the plant closing. *Id*.

In an August 24. 2018 email, Company counsel represented to the Arbitrator that it had fully paid out "2017 vacation pay" to all employees:

> Under Article XX, the Company thought it had in fact paid all employees their full "2017 vacation pay.". Those employees terminated on 4/28/2017, received their full "2017 vacation pay" on 05/12/2017. Those employees terminated on 7/28/2017, received their full "2017 vacation pay" on 08/18/2017.

Doc. 34-13, ECF p. 2.

Trane represented to Arbitrator that the only matter remaining under the

Award was whether employees reaching a "milestone" anniversary date (a date

which increased the number of weeks of vacation) after plant closing should be

credited for the higher number of weeks with respect to the vacation that became

available on January 1, 2017 based on 2016 service. Because only three employees

fell in that category, the Company represented it had complied with the Award:

> However, as we understand the Arbitrator's ruling in his second
> Award, we should have recognized any milestone anniversary date in 2017
> that occurred after any employee's plant closing termination date.
>
> So, based upon your Award, we paid out a week's additional vacation
> pay to three employees who had a milestone anniversary date in 2017 that
> occurred after their 2017 termination dates.

Doc. 34-13 ECF p. 2.

The Company then initiated a conference call with the Arbitrator on July 30,

2018. Doc. 34-3, ECF p. 2.

On September 13, 2018, the Arbitrator sent the following email:

Dear Chris and Mike [Company and Union representatives],
I have reviewed your most recent briefs and emails regarding clarification of
my award. In my second Award, I ruled that the Company was obligated to
recognize any milestone date in 2017 that would occur after the employee's
plant closing date. It is my understanding that the Company complied with
this award by paying a week's additional vacation pay to three employees
who had a milestone anniversary dates in 2017 that would have happened
after their 2017 plant termination dates. I note that the original grievance
cited the CBA violation as Article XX only. However, vacation eligibility
requirements are defined in Article IX [see paragraphs 71 & 72] and is based
on years of continuous service, rather than seniority only. Thus, the
Company complied with my award and I am no longer retaining jurisdiction

in this matter. Thank you for your cooperation and professionalism. Best wishes, Zane

Doc. 34-12, ECF p. 2.

`       The Union called the Arbitrator's attention to the contradiction with his June

Award, as well as the unresolved nonpayment to the remaining 200 workers, on

October 24, 2018. Doc. 34-16. The Union pointed out that the Arbitrator had

already held in the Merits Award that Article IX limitations for vacation pay

payout do not apply to plant closures under Article XX. *Id*. The Company

responded on October 30, 2018. Doc 34-17. The Union submitted a response on

October 31, 2019. Doc. 34-18. The Company's counsel asked the Arbitrator to

grant it until November 6 to respond further. Doc. 34-19. In granting the request,

the Arbitrator wrote: "Certainly. I look forward to reading your response. Regards,

Zane." Doc. 34-19, ECF p. 2.

The Arbitrator had not ruled on the parties' submissions date prior to the

Union's filing this action on December 10, 2018 to preserve its rights under the

three-month limitations period.  Doc. 34-21, ECF p. 239.

### 4.     Trane's admissions to the Eighth Circuit

After this Court dismissed the action on limitations grounds, the Union

appealed in 8th Cir. Case No. 19-2255. The Eighth Circuit ultimately reversed the

dismissal and remanded to this Court. *International Union, UAW v. Trane U.S.*,

970 F.3d 956 (8th Cir. 2020).

At oral argument on January 15, 2020, the Court (through Judges Kobes and Melloy) asked Trane's counsel to clarify the record on the merits. Trane's counsel[2] candidly set forth what Trane had done in responding to the Merits Award. This Court granted judicial notice of the Eighth Circuit oral argument (Doc. 36). We set forth the exchange in full:

> JUDGE KOBES[3]: I know it's not the key issue, but would you quickly address the merits and what -- from the company's perspective what benefits were paid under the arbitration award?
>
> MR. PARKER [Counsel for Trane]: Yes, Your Honor. So Trane pays out vacation a year -- awards employees vacations essentially based on their prior year -- at the end of the prior year. So, for example, here when employees started out January 1 of 2017, the year that the plant closed, they were awarded vacation based on their seniority and years of service at the end of December 31, 2016, okay.
>
> JUDGE KOBES: So were they -- were the bulk of the employees paid 2017 vacation time?
>
> MR. PARKER: Yes, they were. They were paid vacation time that they had earned at the end of 2016, yes.
>
> JUDGE KOBES: That was payable in 2017.

---

[2] Trane's counsel on appeal, Mr. Parker, was not the attorney who had communicated with the Arbitrator on behalf of Trane. Mr. Parker's explanation to the Court of Appeals was forthright and professional, and in the Union's view, cleared up the confusion about Trane's actions in response to the Award. The Union appreciates his candor to the Court.

[3] The transcript of the oral argument, Doc. 35-1, identifies Judge Kobes as "Judge 2" and Judge Melloy as "Judge 3." The audio file on the Eighth Circuit website http://media-oa.ca8.uscourts.gov/OAaudio/2020/1/192255.MP3 establishes their voices and identities.

MR. PARKER: Correct. So –

JUDGE KOBES: Now, there were these three other employees that fell into a different category.

MR. PARKER: Right. So, for example, Your Honor, if you had been with the company long enough, say you started out and you get three weeks of vacation pay in 2017 and you hadn't used a day of it. When the plant closed and you were laid off in April or if you were laid off in July you would have been paid out in full for those weeks of vacation.

JUDGE KOBES: So from the company's perspective is the union actually seeking 2018?

MR. PARKER: They are. They are seeking vacation pay that would have been earned throughout 2017 that would have been issued to those members –

JUDGE KOBES: Okay.

MR. PARKER: -- January 1 of 2018.

JUDGE KOBES: I think you've cleared up my confusion, so thank you.

JUDGE MELLOY: And it's Trane's position they weren't entitled to any vacation pay regardless of how long they worked in 2017?

MR. PARKER: Trane's position, Your Honor, was that they should be paid out that which had been granted to them at the start of the year, and then Trane said that you weren't entitled to anything else, correct. Trane then interpreted the arbitration award and the arbitrator confirmed that if, for example, you had a milestone anniversary date that occurred after the plant closing in 2017, so if, for example, you had worked for the company for 29 years but if you worked there 30 years you would get four weeks instead of three weeks vacation. If your 30th year anniversary date fell after the plant closure the arbitrator said you got to give that person an additional week of pay. So that's what Trane did. Trane went back, looked at its records, found out which employees would have had milestone anniversary dates after the

plant closure date. There were three such employees, and it paid out an additional week of vacation pay to those three employees and that is –

JUDGE MELLOY: Well, if that's the position of Trane, and I understand the union's position is alternative, either they get pro rata or they get the full year, right?

MR. PARKER: I'm not quite sure I understand the union's position, but I think what I hear the union advocating for is they should be paid out in full the vacation that was granted to them at the beginning of 2017, and then that they should be paid out in full the vacation that had the plant not closed and they worked throughout the end of 2017 that they would have got at the beginning of 2018.

JUDGE MELLOY: Or alternatively at least get pro rata for the four months they did work, right?

MR. PARKER: Correct, but I think their argument, though, is they would get the full year.

JUDGE MELLOY: But if that's – assuming that's the union's position I don't read anything in the arbitrator's decision where he addresses that issue.

MR. PARKER: Well, the arbitrator's –

JUDGE MELLOY: Under your interpretation of the arbitration award he just ignored that issue then.

MR. PARKER: Well, we would say he didn't, Your Honor. We would say if you look at his award the actual remedy is that all employees -- and the award is at the record at App. 150 to 167.

And he says I believe on the last page all employees shall be made whole for the full allowance of vacation pay for which they would have qualified for in 2017, which we say would have been that which was granted to them at the beginning of the year, according to the amount of their seniority, and we read that to mean that's if they would have gotten additional pay that year due to their seniority then that's got to be paid to them.

JUDGE MELLOY: It seems to me that's a circular argument because all he's saying is that you get paid what you're entitled to in 2017, and you say they're not entitled to anything. The union says we're entitled to either a full year or at least pro rata, and so how do we know which they're entitled to in 2017?

MR. PARKER: Well, you're right, it was our position they weren't entitled to anything else. The union says they get that full year and the arbitrator came in and said no, they do get something more.

Doc. 35-1, pp. 15-20.

## ARGUMENT

**I.     The Arbitrator's June 29, 2018 Award Plainly Awarded Vacation Pay to All Employees for Time Accrued in 2017, Including at a Minimum Time Actually Worked.**

The sole dispute in this case is whether Trane employees are entitled to be paid vacation pay for time they worked in 2017 (and would have worked that year) under Article XX ¶166(b). The Company argued that employees lost that right because the plant closed, and they were terminated, before the end of the year. The Company contended that because such pay is normally paid out at the beginning of the next calendar year, it had no obligation to pay employees anything more, not even *pro rata* for time actually worked in 2017.

The Merits Award ruled for the Union's position. It held that all Trane employees in the Fort Smith plant were entitled to vacation pay for time for which they would otherwise have qualified in 2017, notwithstanding the fact that the plant closed before the end of the year.

The Company's later representation to the Arbitrator that it had already paid out "2017" vacation pay (by recharacterizing pay earned in 2016 as "2017 vacation pay" was simply an effort to skirt that Award. The Merits Award cannot be read except as a rejection of that position.

**A.     The June 29 Award resolved a dispute about vacation pay earned in 2017, not pay earned in 2016 and paid out as of Jan. 1, 2017.**

**1.     The Company's present claim is contradicted by the June Award's statement of the parties' positions.**

The Company's present claim pretends that "the full allowance of vacation pay for which they would have qualified for in 2017" refers to time worked in 2016, because it became payable on January 1, 2017.

But time earned in 2016 was never in dispute in this case. Trane had not even announced the plant closing as of January 1, 2017. The dispute in this case centered on pay for service in 2017, regardless of whether the plant closed before the ordinary time of payout.

The Arbitrator's description of the parties' positions in the June 29 Award shows what was in dispute. The Arbitrator quoted the Union's position:

> Specifically, there is a section dealing with severance pay, and it also talks about any allowances for which they might have qualified for during the calendar year in which the plant closes, which would be 2017. The employees here earn their vacation and their sick pay the year prior. So in 2016, they are reloaded for what they earn in 2015. And traditionally, the way it happens is if an employee has left or been terminated, quit, retired, they would get paid out whatever they had earned the previous year. And that's defined in Article IX.

> But Article XX goes above and beyond that. <u>It talks about if they stay till the end of a plant closing, that they would accrue what they would have gotten in the year in which the plant closes. So today, we intend to show you, through the language of the contract and the language of the Memorandum of Understanding, that that is what the parties had agreed to and bargained, and the employees were not paid their 2017 allowance for vacation or sick pay that they earned that calendar year</u>.

Doc. 34-10, ECF p. 3 (emphasis supplied.)

The Company took the opposite position. As the Arbitrator summarized it: "an employee's year of continuous service would have to occur in 2017, prior to being terminated on either April 4, 2017 or July 28, 2017, in order to earn vacation pay." Doc 34-10, ECF p. 4.

### 2.    The Company's position cannot be squared with the Arbitrator's application of the *Canteen* award.

The Merits Award squarely rejected the Company's position and upheld the Union's. The operative portion of the Arbitrator's Merits Award was his application of *Canteen Corp.*, 101 Lab. Arb. (BNA) 925 (1993):

> Arbitrator David Borland held in a case similar to the instant circumstances "employees were held to be entitled to vacation pay when the employer ceased its operations prior to the employees' anniversary dates of employment, despite the fact that the contract provided that vacation pay was to be issued on the employee's anniversary date" (*Canteen Corp.*, (101 [Lab. Arb. (BNA)] 925 (1993). Arbitrator Borland reasoned that, "because the agreement contained other language that permitted the taking of earned vacation prior to an employee's anniversary date, employees who met the work requirements for vacation were entitled to their full vacation pay" (Elkouri and Elkouri, [How Arbitration Works], 2003, 1048).

Doc. 34-10, ECF p. 18.

The critical holding in the Merits Award is that the fact that vacation pay was normally paid out at an employee's work anniversary does not prevent employees in a plant closing from recovering vacation pay for the time earned during the year in which the plant closed. Arbitrator Reeves' holding that employees are "entitled to vacation pay when the employer ceased its operations prior to the employees' anniversary dates of employment, despite the fact that the contract provided that vacation pay was to be issued on the employee's anniversary date," is taken directly from *Canteen Corp*.

The Merits Award rejected the very theory that the Company would later incorporate when it represented that it paid out "2017" vacation pay.

### 3.    Pay for time worked in 2016 was not in dispute.

The Company's representation to the Arbitrator that it had paid out "2017" vacation pay after the Merits Award was misleading. As Trane would later admit to the Court of Appeals, this was a reference to pay earned in 2016 and payable on Jan. 1, 2017.

This prior payment for 2016 time was, of course, irrelevant to the Union's grievance and the issue contested in the Merits Award. The right to vacation pay for time worked in 2016 was never in dispute in this arbitration. As the Merits Award reflected, the Union was not complaining about vacation pay earned in 2016, but vacation pay that was earned, and would have been earned, in 2017: "For

example, Union witness Mike Klomfas testified that he was paid out on August 6, 2017 for vacation and sick pay that he earned in 2016, but not for any leave in 2017. Klomfas asserted that he was 'shorted sick and vacation pay for 2017.'" Doc. 34-10, ECF p. 12.

The Arbitrator's June 29 Merits Award was the resolution of the dispute between the parties over vacation pay for time <u>earned</u> in 2017, regardless of whether the plant closed before the normal January 1, 2018 payout date.

## B.     The June 29 Award required relief for "all employees."

The June 29, 2018 Merits Award concluded: "[T]he Company imposed arbitrary guidelines for determining eligibility for 2017 vacation pay for employees who were terminated at plant closing. There was no compelling evidence produced to demonstrate that the eligibility requirements applied to employees who willingly retire also should be applied to employees who lose their jobs because of the Company's unilateral decision to close a plant . . . Thus, all employees shall be made whole for the full allowance of vacation pay for which they would have qualified for in 2017, according to the amount of their seniority." Doc. 34-10 at ECF p. 19.

The Company now maintains that this Merits Award was trivial – that notwithstanding the Arbitrator's apparent ruling for the Union, Trane was nevertheless permitted to adhere to the very position that the Union disputed and

20

the Merits Award rejected – that it could refuse vacation pay for any time earned in 2017, including even time actually worked, on the ground that these employees were terminated before the full calendar year expired.

This makes nonsense of the Merits Award.

## II.     Inconsistency and Incompleteness Are Grounds To Remand An Award.

Against this background, the Arbitrator's September 13 email focusing on only three employees with "milestone" anniversaries is either an omission or an inconsistency with the Merits Award. Either is a sufficient ground for the Court to remand to the Arbitrator to clarify the ruling.

### A.     The Arbitrator's Sept. 13 email apparently relied on the Company's representation that it paid out "2017" time.

The Arbitrator's September 13, 2018 email focused on three employees with milestone anniversaries, without addressing vacation pay for accrued time in 2017 for the remaining 200 employees in the unit. Doc. 34-12, ECF p. 2.

The apparent reason for this is the Company's representation that it <u>had</u> paid out "2017" vacation time after the Merits Award issued. As we discuss above, this representation was misleading. The Company simply adhered to its initial position (rejected in the Merits Award) that vacation pay accruing in the year of a plant closing was not payable because employees did not reach their normal end-of-year payout date. As a result, it presented the undisputed payment of 2016 vacation time

21

as "2017 vacation pay," and then told the Arbitrator that the only remaining issue concerned three employees with milestone anniversaries.

The Court need not decide whether the Arbitrator's acceptance of that invitation was an inadvertent omission or a conscious about-face. In either event, the Court should remand to the Arbitrator for a clearer explanation of his ruling.

### B.   An incomplete or contradictory award should be remanded.

#### 1.   Incompleteness

As Judge Melloy noted at oral argument in the Court of Appeals: "I understand the union's position is alternative, either they get pro rata or they get the full year . . . I don't read anything in the arbitrator's decision where he addresses that issue. . . Under [Trane's] interpretation of the arbitration award he just ignored that issue then." Doc. 35-1, ECF p. 19.

This colloquy was not the basis of the Eighth Circuit's ultimate ruling reversing dismissal, which did not reach the merits. But if Judge Melloy's observation is correct, the Award should be remanded as incomplete. Where an arbitrator fails to clearly address a claim, the FAA provides for a remand to fulfill the Arbitrator's commission. *See Gas Aggregation Services, Inc. v. Howard Avista Energy, LLC.*, 319 F.3d 1060, 1069 (8th Cir. 2003) ("A court can vacate an arbitrator's award where the arbitrators fail to make a 'mutual, final, and definite award upon the subject matter submitted.' 9 U.S.C. § 10(a)(4). The arbitrator must

'resolve all issues submitted to the arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award.'" *citing Dighello v. Busconi*, 673 F.Supp. 85, 90 (D.Conn. 1987)). The Court should simply ask Arbitrator Reeves to explain his Merits Award in favor of the claims of all employees to time accrued in 2017, in light of the Company's subsequent admission that its purported payment of "2017 vacation pay" really referred to the prior, undisputed payment for time worked in 2016. While the oral argument occurred after the arbitration, the Eighth Circuit will consider subsequent admissions where they bear on the arbitration award's consistency. *See MidAmerican Energy Co. v. Int'l Broth. of Elec. Workers*, 345 F.3d 616, 622 (8th Cir. 2003). Statements made during oral arguments in the same case are subject to judicial notice, as this Court has ruled in granting judicial notice. *See Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 996 (8th Cir. 2008).

### 2.     Contradictory holding

In the alternative, if the Arbitrator's September 13 email is taken as a conscious decision to disqualify all but three Trane employees from vacation pay for time worked in 2017 (because the plant closed before the end of the year), his Award is fatally contradictory. This would be a complete reversal on the very issue resolved in the Union's favor in the Merits Award. In particular, such a decision would directly contradict the Merits Award's adoption of *Canteen Corp.*, 101 Lab.

Arb. (BNA) 925 (1993), which calls for payout of accrued time despite the fact that a plant closes before the full year in which such work is normally paid.

An internal contradiction in an Arbitrator's award is grounds to remand for clarification of the inconsistency. *See RGA Reinsurance Co. v. Ulico Cas. Co.*, 355 F.3d 1136, 1139 (8th Cir. 2004) ("If an arbitration award is inconsistent or serious doubt exists as to its meaning, the district court may vacate, modify, or correct the award . . . "); *Keebler Co. v. Milk Drivers and Dairy Employees Union*, 80 F.3d 284, 287 (8th Cir. 1996) (vacating award where "the arbitrator's analysis contains a glaring internal inconsistency"); *George A. Hormel & Co. v. United Food & Commercial Workers, Local 9*, 879 F.2d 347, 350-351 (8th Cir. 1989) (inconsistency in award is ground to vacate); *Harvill v. Roadway Express*, 640 F.2d 167, 170 (8th Cir. 1981) (same); *Automotive Petroleum Employees Union, Local 618 v. Sears, Roebuck and Co.*, 581 F.Supp. 672, 676-677 (E.D.Mo. 1984) ("the federal rule of labor law provides that federal courts have the power to remand an arbitration award to the arbitrator that issued it where the award is incomplete, ambiguous or inconsistent.").

If the Arbitrator's Sept. 13 email is taken as a conscious ruling, the Court is left with irreconcilable statements in the Award. Does the fact that a plant closing occurs in mid-2017 prevent employees from recovering vacation pay that would

have been earned that year? The Merits Award says it does not, but the Company's version of the remedy says it does.

While the Arbitrator is entitled to great deference, the Court is entitled to a clear statement of what the Court is expected to review.

## III.   The Remedy is Merely a Remand to Clarify the Arbitrator's Ruling.

### A.   The Court does not re-determine the merits.

The Union does not ask this Court to substitute its view of the Agreement for the Arbitrator's. The Union only seeks the modest remedy of a remand to obtain the Arbitrator's clarification of the apparent omission. The Arbitrator may explain, in light of the Company's clearer explanation of its actions to the Court of Appeals, whether he intended to order vacation pay for time in 2017, or merely the undisputed "2017" vacation payout for hours worked in 2016.

The Court may not do more under *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001). "Even when the arbitrator's award may properly be vacated, the appropriate remedy is to remand the case for further arbitration proceedings." *Garvey*, 532 U.S. at 511. "[A]s a rule the court must not foreclose further proceedings by settling the merits according to its own judgment of the appropriate result, since this step would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for in the collective-bargaining agreement." *United Paperworkers Int'l Union v. Misco, Inc.*,

484 U.S. 29, 40 n.10 (1987), Instead, the Court "should simply vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement." *Id*.

    **B.    Judicial economy favors a remand.**

    The filing of this lawsuit preempted the Arbitrator from passing on the parties' submissions in October and November 2018. Doc. 34-16 through 34-20. While the Company objected that the Arbitrator was *functus officio* at that point, a remand from the Court would revive the Arbitrator's jurisdiction. *See Int'l Woodworkers of Am. v. Weyerhaeuser Co.*, 7 F.3d 133, 137 (8th Cir.1993).

    A remand to the Arbitrator would conserve judicial resources. If Trane's reading is correct, the Arbitrator will say so clearly and resolve the issue. The judicial resources expended in a simple remand to the Arbitrator are minimal compared to the burden on the Court of Appeals if remand were denied.

    ///

    ///

## **CONCLUSION**

The Court should vacate the Arbitration Award and remand Federal

Mediation and Conciliation Service Case No. 17-0714-S5750 to Arbitrator Reeves

for clarification of Trane employees' right to vacation pay for time worked and

accruable in 2017, under the terms of the Arbitrator's June 29, 2018 Merits Award.

Dated November 9, 2020                     Respectfully submitted,

                                          /s Michael T. Anderson
                                          Murphy Anderson PLLC
                                          1401 K Street NW, Suite 300
                                          Washington, DC  20005
                                          Tel.: 202-223-2620; Fax: 202-296-9600
                                          manderson@murphypllc.com

                                          John L. Burnett     77021
                                          Lavey & Burnett
                                          904 W. Second Street
                                          Little Rock, AR  72201
                                          Tel.: 501-376-2269; Fax: 501-372-1134
                                          jburnett@laveyandburnett.com

                                          Attorneys for Plaintiffs International Union,
                                          UAW and UAW Local 716

## CERTIFICATE OF SERVICE

On November 9, 2020, I electronically submitted and served the foregoing document with the Clerk of Court for the United States District Court for the Western District of Arkansas and on counsel for Defendants below, using the electronic case filing system of the Court.

> Paul Hash
> Talley R. Parker
> Wendy Wilkins
> JACKSON LEWIS P.C.
> 500 N. Akard, Suite 2500
> Dallas, Texas 75201

<u>/s Michael T. Anderson</u>